**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ALAN BARCELONA** | **CIVIL ACTION** |
| **VERSUS** | **No. 08-4473** |
| **BRYAN CHEVROLET, INC.** | **SECTION: I/5** |

## ORDER AND REASONS

Before the Court is a motion for partial summary judgment filed by defendant, Bryan Chevrolet, Inc.("Bryan"), with respect to plaintiff's claim that Bryan denied him a reasonable accommodation for his disability in violation of the Americans with Disabilities Act. For the following reasons, the motion is **GRANTED**.

## BACKGROUND

Bryan employed plaintiff, Alan Barcelona ("Barcelona"), to work as a body shop technician in its body and repair shop in Metairie, Louisiana from August, 1997 to February, 1999.[1] In March, 2007, Bryan rehired Barcelona to perform the same work.[2]

Throughout both periods of employment, Barcelona wore a prosthesis on his right leg as his leg had been amputated below the knee due to an injury which he sustained in a 1978 automobile accident.[3] Barcelona does not recall whether he informed his

---

[1] Rec. Doc. No. 22-5, paras. 1-3; Rec. Doc. No. 23-3, paras. 1-3.

[2] *Id.* at para. 4.

[3] Rec. Doc. No. 22-2, p. 2.

1

supervisor that he needed an accommodation in order to perform his job during his first period of employment from 1997 to 1999.[4] During his employment in 2007, Barcelona asked his supervisor, Pat Graham ("Graham"), for steps to use in connection with the body shop's frame machine.[5] Within one day of his request, Graham provided Barcelona with steps.[6] The steps allowed Barcelona to easily step on and off the frame machine without having to jump or climb.[7]

Approximately two days after Graham gave Barcelona the steps, "they were gone."[8] Barcelona searched for the steps and asked others about the whereabouts of the steps, but no one knew where they were.[9] At his deposition, Barcelona initially testified that he could not recall whether he asked Graham for the steps again.[10] However, Barcelona later testified at his deposition that he asked Graham for another set of steps and that

---

[4] *Id.* at p. 5; Rec. Doc. No. 22-5, para. 3; Rec. Doc. No. 23-3, para. 3.

[5] Rec. Doc. No. 22-2, p. 7; Rec. Doc. No. 22-5, para. 7; Rec. Doc. No. 23-3, para. 7.
At his deposition, plaintiff testified that Graham asked him about the whereabouts of the steps. Rec. Doc. No. 23-2, p. 8 ("Pat came over there and asked me, you know, 'Where were the steps?'").

[6] Rec. Doc. No. 22-2, p. 7; Rec. Doc. No. 22-5, para. 7; Rec. Doc. No. 23-3, para. 7.

[7] Rec. Doc. No. 22-2, p. 9; Rec. Doc. No. 23-2, p. 8.

[8] *Id.* at p. 8.

[9] *Id.*

[10] Barcelona testified that he could not remember if Graham was working at Bryan when the steps disappeared. *Id.*

Graham told him he would provide him with another set.[11]

Graham resigned from Bryan shortly after the steps disappeared.[12] Barcelona did not inform his new supervisor, Joe Carroll ("Carroll"), that the steps were missing or that he needed an accommodation.[13] Barcelona resigned a few weeks later on or about October 26, 2007.[14]

In September, 2008, Barcelona filed this lawsuit against Bryan. Barcelona's complaint alleges that Bryan harassed and discriminated against him because of his disability, leading to his constructive discharge.[15] Barcelona further claims that Bryan failed to reasonably accommodate his disability and that Bryan retaliated against him for reporting the alleged discrimination.[16]

Bryan has moved for partial summary judgment with respect to

---

[11]*Id.* at p. 17.

[12]*Id.* at p. 12; Rec. Doc. No. 23-2, p. 8. At his deposition, Barcelona testified as follows:
> Q. Was this in short proximity when the steps were missing prior to the termination?
> ...
> A. Yeah, maybe a week. It was right before Pat Graham quit.
*Id.*

[13]Rec. Doc. No. 22-5, para. 10; Rec. Doc. No. 23-3, para. 10.

[14]Rec. Doc. No. 22-2, pp. 15-17. Barcelona testified that he resigned about a month after he asked Graham for the steps. *Id.* at p. 17. He also testified that Graham resigned "maybe a month, maybe a few weeks" before him. *Id.* at pp. 12-13.

[15]Rec. Doc. No. 1.

[16]*Id.* Plaintiff has dismissed claims for unpaid wages, compensation discrimination, and disparate treatment regarding days off. Rec. Doc. No. 21.

plaintiff's claim that he was denied a reasonable accommodation. Bryan argues that it immediately responded to plaintiff's request for an accommodation, i.e., the steps, and that plaintiff failed to inform Bryan of his need for an accommodation after the steps disappeared. Barcelona contends that the steps were hidden or taken from him and that he was not required to formally request another set or engage in further discussions with Bryan regarding the accommodation.

## LAW AND ANALYSIS

### I. STANDARD OF LAW

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255, 106 S. Ct. at 2513, 91 L. Ed. 2d at 216; *see Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731, 741 (1999).

## II. **REASONABLE ACCOMMODATION**

The Americans with Disabilities Act ("the ADA") prohibits discrimination in employment against individuals with disabilities.

5

42 U.S.C. 12112(a). The ADA further requires employers to make reasonable accommodations for employees with known physical or mental limitations unless the accommodation would impose undue hardship on the employer.[17] *Id.* at § 12112(b)(5)(A); *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 734 (5th Cir. 1999).[18] "Because the ADA requires employers to accommodate the limitations arising from a disability, and not the disability itself, an employee seeking to assert a disability discrimination claim must produce evidence that the employer knew not only of the employee's disability, but also of the physical or mental limitations resulting therefrom." *Seaman v. CPSH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1997).

The burden is on the employee to request a reasonable accommodation. *Jenkins v. Cleco Power, LLC.*, 487 F.3d 309, 315 (5th Cir. 2007). "Once an employee has made a request for an accommodation, the ADA's regulations state that 'it may be necessary for the [employer] to initiate an informal, interactive

---

[17]A reasonable accommodation is defined to include "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position" and "modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." 29 C.F.R. § 1630.2.

[18]To establish a reasonable accommodation claim, an employee must show that: "(1) the employer is covered by the statute; (2) she is an individual with a disability; (3) she can perform the essential functions of the job with or without reasonable accommodations; and (4)the employer had notice of the disability and failed to provide accommodation." *Bridges v. Dept. of Soc. Servs.*, No. 00-30804, 2001 WL 502797, at *1 (5th Cir. 2001)(citing *Lyons v. Legal Aid Soc'y*, 68 F.3d 1512, 1515 (2d Cir. 1995)).

6

process with the qualified individual with a disability in need of the accommodation' in order to craft a reasonable accommodation." *Loulseged*, 178 F.3d at 735 (quoting 29 C.F.R. § 1630.2(o)(3)); *see also Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 165 (5th Cir. 1996)("Thus, it is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one."),

The interactive process does not, however, rest entirely with the employer, but it also requires the input of the employee. *Loulseged*, 178 F.3d at 735. "In other words, once an accommodation is properly requested, the responsibility for fashioning a reasonable accommodation is shared between the employee and employer." *Taylor*, 93 F.3d 155 at 165. "The need for bilateral discussion arises because 'each party holds information the other does not have or cannot easily obtain.'" *Loulseged*, 178 F.3d at 735 (quoting *Taylor v. Phoenixville Sch. Dist.*, 174 F.3d 142, 162 (3d Cir. 1999)).

Given the bilateral nature of the interactive process, it is necessary to consider whether the employer or the employee caused a breakdown in the process. *See id.* at 736; *Beck v. Univ. of Wis. Bd of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)("[C]ourts should attempt to isolate the cause of the breakdown and then assign responsibility."). "[W]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably

7

accommodate an employee, the employer violates the ADA." *Loulseged*, 178 F.3d at 736. However, when the breakdown is traceable to the employee, the employer cannot be found to have violated the ADA. *Id.*

Barcelona admits that Graham provided him with the steps within a day of his request and that Graham resigned shortly after the steps disappeared.[19] Therefore, Barcelona cannot establish that Bryan denied him a reasonable accommodation without evidence that Barcelona's new supervisor, Carroll, knew of Barcelona's reliance on the steps and that Barcelona no longer had such accommodation. *See Ned v. Opelousas Gen. Hosp.*, No. 04-1536, 2007 WL 952072 (W.D. La. Mar. 26, 2007)(rejecting the argument that a plaintiff need not request a reasonable accommodation when her former supervisor had previously accommodated her disabilities*).*

Barcelona offers no evidence that he requested an accommodation from anyone after Graham resigned or that anyone other than Graham knew of his need for an accommodation.[20] In a

---

[19]Rec. Doc. No. 23-2, pp. 5, 8.

[20]Barcelona testified as follows at his deposition:
    Q. Did you ever ask anyone for any sort of help or accommodation?
    A. Yes.
    Q. Who did you ask?
    A. Uh, Pat Graham.
    Q. And what did you ask him for?
    A. Steps for the frame machine.
    Q. Did he get one for you?
    A. Yeah.
    ...
    Q. Okay. Did he ever deny you the right to use the steps?
    A. No, but they were gone in [sic] two days later.
    Q. Did he get them back?

sworn affidavit, Carroll, who replaced Graham as body shop manager in October, 2007, declared that Barcelona never informed him, during the few weeks that he served as Barcelona's supervisor, that he needed any type of accommodation, such as the steps, or that the steps were missing.[21] Barcelona's deposition testimony indicates that Barcelona quit within a few weeks of his request for the steps.[22]

The Court is not persuaded by Barcelona's broadly stated argument that under Fifth Circuit caselaw, a plaintiff is "not required to formally request a replacement accommodation." In *Loulseged*, the Fifth Circuit concluded that the plaintiff was not required to make a formal request for a new accommodation because

---

        A. No.
        Q. Did you ask him for them again?
        A. I don't recall.
        Q. Did other people –
        A. I was looking for them. I don't know who I told or what happened to them. Any nobody knew where they were at.
        Q. Okay. Did you ask for another set?
        A. I don't know. I don't remember. I don't know if he was working there then or not. He might have quit in between there or something. I don't remember.
        Q. You agree the times that you asked for this accommodation they got them for you.
        A. Well, when I asked for the steps, yeah.
        Q. Did you ask for any other accommodations?
        A. No. I brought my own stool in....
        ...
        Q. Well, did you ask Pat for another one?
        A. Yeah. He said "I'll get it for you." Never did.
        Q. When was that?
        A. I don't remember.
        Q. How far was – How long before you resigned?
        A. Well, it had to be at least a month or so because Pat wasn't there no more.
Rec. Doc. No. 22-2, pp. 7-9, 17.

[21]*Id.* at p. 18.

[22]*Id.* at pp. 12-13, 17.

"the previously agreed on system was withdrawn." 178 F.3d at 736.[23] Barcelona, on the other hand, submits no evidence that Bryan **withdrew** his accommodation. Barcelona testified that he did not know "what happened to [the steps]" and that nobody whom he asked knew where they were.[24] Barcelona offers only his subjective belief and speculation that the steps were hidden from him.[25]

Barcelona also unconvincingly cites *Loulseged* to support his argument that further consultation with Bryan was not necessary because the accommodation was "so easily provided and obvious." The Fifth Circuit has recognized that "there may be some circumstances in which the reasonable accommodation is so obvious that a solution may be developed without either party consciously participating in an interactive process." *Id.* at 736. The circumstances of this case, however, do not come within that exception as Barcelona's evidence fails to establish a genuine issue of material fact that

---

[23]The Court notes that Barcelona has taken other statements from *Loulseged* out of context, particularly that an "employer may have an extra duty to explore the employee's condition...and that the interactivity of the process may be of less importance." 178 F.3d at 736 n.5 . The quoted portion of the Fifth Circuit's discussion relates to employees with mental illnesses who "may not be fully aware of the limitations their conditions create, or be able to effectively communicate their needs to an employer." *Id.*

[24]*Id.* at pp. 8, 17.
Carroll stated in his deposition that the steps came as an attachment to the frame machine and that any employee could use them. Rec. Doc. No. 22-2, p. 18. Barcelona testified that the steps were previously on the machine. *Id.* at p.7.

[25]Rec. Doc. No. 23-2, p. 8 ("It didn't just disappear."). The Court also notes that when the steps disappeared on a previous occasion, Graham found them and allowed Barcelona to use them. Rec. Doc. No. 22-2, pp. 7-8.

his need for a reasonable accommodation was obvious.[26] Although Barcelona had a prosthesis on his leg the entire time that he worked at Bryan, including the first employment period from August, 1997 to February, 1999, there is no evidence that he asked for an accommodation before the fall 2007, when he spoke with Graham.[27] According to Barcelona, Graham, the only supervisor who he advised that he needed the steps, resigned around the same time that the steps disappeared. Furthermore, Barcelona worked for a few more weeks without the steps until he resigned on or about October 26, 2007.[28]

The evidence presented does not demonstrate a genuine issue of material fact with respect to the reasonable accommodation issue. The record before the Court does not show that Bryan failed to engage in an interactive process or that further consultation with Bryan was unnecessary. Accordingly,

**IT IS ORDERED** that the motion for partial summary judgment is

---

[26] Barcelona submits evidence that Bryan employees knew that he had a prosthesis and that they called him "Woody" because of this condition. However, whether it was obvious to Bryan that Barcelona had a prosthesis is not material. The relevant inquiry is whether ***the reasonable accommodation*** is obvious.

[27] Barcelona testified that he does not recall asking his supervisor in 1997 for an accommodation. Rec. Doc. No. 22-2, p. 5; Rec. Doc. No. 22-5, para. 3.

[28] The Court is also not convinced that it would have been futile for Barcelona "to speak up," given the change in management and the lack of a "clear declaration by [Bryan] that no reasonable accommodation is forthcoming." See *Loulesged*, 178 F.3d at 739 ("A clear declaration by an employer that no reasonable accommodation will be forthcoming might indeed be seen as terminating the interactive process and removing any duty the employee had to speak up.").

**GRANTED** and that Barcelona's reasonable accommodation claim pursuant to the ADA is **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, July 30th, 2009.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**